```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF ALABAMA
                      SOUTHERN DIVISION

DEBRA L. SAWYER,                    *
                                    *
    Plaintiff,                      *    CIVIL ACTION NO. 14-00500-B
                                    *
vs.                                 *
                                    *
CAROLYN W. COLVIN,                  *
Commissioner of Social Security,    *
                                    *
    Defendant.                      *
```

## ORDER

Plaintiff Debra L. Sawyer (hereinafter "Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. On December 15, 2015, the parties waived oral argument and consented to have the undersigned conduct any and all proceedings in this case. (Docs. 14, 15). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

I.  **Procedural History**

Plaintiff filed an application for a period of disability and disability insurance benefits on June 20, 2008, alleging that she has been disabled since March 2, 2008, due to "back problems" that cause her to be "in pain all the time." (Tr. 249, 253). Following a hearing, Administrative Law Judge Ronald Reeves rendered a "partially favorable" decision, finding that Plaintiff was disabled as of February 24, 2010, instead of her alleged disability onset date of March 2, 2008. (Id. at 119). Plaintiff sought review before the Appeals Council of her onset date, and on appeal, the Appeals Council, on June 26, 2012, reversed the ALJ's "partially favorable" decision, and remanded the case. (Id. at 121-123). The Appeals Council directed that another hearing be conducted in order to reconsider the entire period of adjudication and to obtain additional evidence related to Plaintiffs' back impairment, including: updated records from her treating physicians, a consultative orthopedic examination, and a Medical Source Statement about what Plaintiff can still do despite her impairments. (Id. at 43). In addition, the Appeals Council instructed the ALJ to enlist the aid of a medical expert at the hearing and to reconsider whether Plaintiff can return to any of her past relevant work. (Id. at 128-29).

On March 13, 2013, a second administrative hearing was conducted by ALJ Judge Roger A. Nelson. (Id. at 35). Plaintiff

attended the hearing with her counsel and provided testimony related to her claims. (Id. at 43). A vocational expert ("VE") and a medical expert also appeared at the hearing and provided testimony. (Id. at 59, 77). On May 2, 2013, ALJ Nelson found that Plaintiff is not disabled. (Id. at 29). The Appeals Council denied Plaintiff's request for review on September 22, 2014. (Id. at 1). Thus, the ALJ's decision dated May 2, 2013, became the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

**II.   Issue on Appeal**

   **Whether the ALJ erred in rejecting the opinion of Plaintiff's treating nurse practitioner, Kathy Hintz, PA-C?**

**III.  Factual Background**

Plaintiff was born on October 5, 1959, and was fifty-three years of age at the time of her administrative hearing on March 13, 2013. (Tr. 35, 43). Plaintiff testified that she completed the eleventh grade in high school and obtained her GED. (Id. at 44). In addition, she attended a program to become a nursing assistant, but she did not complete her degree. (Id.).

Plaintiff's onset date is March 2, 2008. (Id. at 249). At

3

her hearing, Plaintiff testified that she has back pain and fibromyalgia pain that hurts constantly and that she is constantly fatigued. (Id. at 50, 57). Plaintiff has received steroid injections, which have helped decrease her pain. (Id. at 52, 339). In addition, she has taken Cymbalta, Hydrocodone, and Flexeril. (Id. at 52-53). Her "biggest problem" is fibromyalgia, for which she takes Cymbalta, which "sometimes" gives her relief; she has "good days and bad days with it." (Id. at 54).

Plaintiff has past work as a rental agent for condominiums on Dauphin Island and as an assistant director of human resources at a theme park in Florida. (Id. at 51, 305). Plaintiff also worked part-time, after her alleged onset date, as a waitress, but the ALJ found that this work did not rise to the level of substantial gainful activity. (Id. at 23, 45).

Plaintiff lives with her husband and fifteen-year-old grandson, and they share the cooking and household duties, including cleaning the bathrooms. (Id. at 49-50). Plaintiff's activities of daily living also include driving five days a week to take her husband to work and going to the store, although she testified that she very rarely shops alone. (Id. at 48-49). Plaintiff also testified that she drove herself to the hearing. (Id. at 48).

**IV. Analysis**

    **A.   Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[1] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4

---

[1] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

5

(S.D. Ala. June 14, 1999).

    **B.**    **Discussion**

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability.[2] 20 C.F.R.

---

[2] The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. Id. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the

§§ 404.1520, 416.920.

In the case *sub judice*, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since March 2, 2008, her alleged onset date, and that she has the severe impairments of multi-level degenerative disc disease, multi-level disc protrusion, and fibromyalgia.  (Id. at 23).  In addition, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Id.).

The ALJ concluded that Plaintiff retains the residual functional capacity (hereinafter "RFC") to perform a range of light work; however, she has the following limitations: she can stand for one hour at a time or walk for thirty minutes at one time for a combination of standing/walking for five hours total in an eight-hour day; she can sit for one hour at a time but can generally function in a sitting position with some accommodation; she would need two to three minutes at a time every hour to stretch at her workstation before changing from

---

claimant's residual functional capacity, age, education, and work history.  Sryock v. Heckler*,* 764 F.2d 834, 836 (11th Cir. 1985).  If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled.  Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).  See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler*,* 749 F.2d 1562, 1564 (11th Cir. 1985)).

sitting to standing; she can never climb ladders, ropes or scaffolds; she can occasionally climb ramps or stairs; she can occasionally push/pull with the lower extremities; she can never have exposure to vibrations such as power tools; and she can frequently grip, grasp, manipulate, push, or pull with the hands or arms. She can only occasionally bend, stoop, squat, kneel or crouch. (Id. at 24).

The ALJ also determined that while Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of the alleged symptoms were not very credible. (Id. at 25).

Given Plaintiff's RFC, the ALJ found that Plaintiff is able to perform her past relevant work as a rental agent (light and skilled) and human resources clerk (sedentary and skilled). (Id. at 28-29). At the hearing, the VE testified that Plaintiff could perform her past relevant work. (Id. at 80-81). Thus, the ALJ concluded that Plaintiff is not disabled. (Id. at 29).

The Court now considers the foregoing in light of the record in this case and the issue on appeal.

1. **Issue**

   **Whether the ALJ erred in rejecting the opinion of Plaintiff's treating nurse practitioner, Kathy Hintz, PA-C?**

Plaintiff argues that the ALJ erred in rejecting the

February 24, 2010, opinion of her treating nurse practitioner, Kathy Hintz, PA-C, that Plaintiff is not able to work due to chronic back and neck pain.  (Doc. 11 at 2; Tr. 385).  Plaintiff maintains that, while Ms. Hintz is not technically an "acceptable medical source," SSR 06-03p allows the Commissioner to use evidence from "other sources," such as nurse practitioners, to show the severity of a claimant's impairments and how they affect the claimant's ability to function.  (Doc. 11 at 2).  Thus, Plaintiff argues, the ALJ erred in assigning no weight to Ms. Hintz's opinion.  (Id.).  The Commissioner counters that the ALJ did not err because he considered Ms. Hintz's opinion and then rejected it because the opinion is inconsistent with the substantial medical evidence in this case.  The Court agrees that Plaintiff's claim is without merit.

The regulations are clear that a nurse practitioner is not an "acceptable medical source" for purposes of establishing an impairment.  See Coralic v. Commissioner of Soc. Sec., 2014 U.S. Dist. LEXIS 159272, *23 (M.D. Fla. Oct. 28, 2014) (citing 20 C.F.R. §§ 404.1513(a), 416.913(a), adopted by 2014 U.S. Dist. LEXIS 159141, 2014 WL 6065757, *9-10 (M.D. Fla. Nov. 12, 2014). "However, a nurse practitioner is an 'other' medical source used 'to show the severity of impairments and how the impairments affect ability to work.'"  Id. (quoting 20 C.F.R. § 404.1513(d)(1)).  "Opinions from nurse practitioners are

9

'important and should be evaluated on key issues such as impairment severity and functional effects.'" Id. (citing SSR 06-03p).

SSR 06-03p provides, in part:

In addition to evidence from "acceptable medical sources," we may use evidence from "other sources," as defined in 20 CFR 404.1513(d) and 416.913(d), to show the severity of the individual's impairment(s) and how it affects the individual's ability to function.  These sources include, but are not limited to:

. . . nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists; . . . .

Information from these "other sources" cannot establish the existence of a medically determinable impairment.  Instead, there must be evidence from an "acceptable medical source" for this purpose.  However, information from such "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function. . . .

With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists.  Opinions from these medical sources . . . are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file. . . .

> Although 20 CFR 404.1527 and 416.927 do not address explicitly how to evaluate evidence (including opinions) from "other sources," they do require consideration of such evidence when evaluating an "acceptable medical source's" opinion. . . .
>
> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006).

In this case, the record shows that the ALJ evaluated Ms. Hintz's opinion that Plaintiff is unable to work because of her chronic back and neck pain and specifically found that the opinion was inconsistent with the medical evidence in the case, as well as with the opinion of the medical expert at the administrative hearing. (Tr. 27). Having reviewed the evidence in this case at length, the Court agrees.

The record shows that Ms. Hintz treated Plaintiff at the Mostellar Medical Clinic from January 2010 to April 2012. (Id. at 385-427). Ms. Hintz's office notes dated February 18, 2010,

11

reflect that Plaintiff was seeking a letter of disability because she "does not feel she is able to work at this time," and that "we will dictate a letter stating this." (Id. at 392). Interestingly, the office notes reflect that on the same date, Ms. Hintz observed that Plaintiff was in no apparent distress. (Id.). After only one month of treatment, Ms. Hintz, on February 24, 2010, wrote a disability letter stating that Plaintiff has "multiple health issues," including disc protrusions at T10-T11, L3-L4, and L4-L5 which cause chronic pain in her neck and back and render her unable to stand or sit for long periods of time and unable to work. (Id. at 385).

As the ALJ found, this opinion is inconsistent with the medical evidence of record, including the following: (1) An MRI of Plaintiff's thoracic spine on June 19, 2008, which showed only minimal disc protrusion at T10-11 (the mid back) and no evidence of impingement or stenosis (id. at 329); an MRI of the cervical spine on July 23, 2008, which showed mild changes and offered no "expla[nation] [of] the patient's symptoms; (id. at 348); and an MRI of the lumbosacral spine taken on August 15, 2008, which showed right disc protrusion at L3-L4 and mild diffuse disc protrusion at L4-L5 (id. at 346); (2) neurosurgeon Dr. Antonio DiSclafani, M.D. (who treated Plaintiff from July to August 2008 for "multiple aches and pains"), recorded normal examination findings and opined that Plaintiff's MRI of the

12

lumbar spine on August 21, 2008, revealed no findings that could account for her complaints (id. at 345, 347); (3) consultative orthopedic specialist Dr. Wagdi Faris, M.D. examined Plaintiff on July 21, 2008, and concluded that there was "no indication for surgical intervention," that Plaintiff ambulated with a "completely normal gait," that the straight leg raise was "completely negative," that her reflexes, sensation, strength, and rotation in her hips were all "good" and "normal," despite claims of pain radiating to her hips and neck, that x-rays of thoracic spine were unremarkable, and an MRI showed minimal disc protrusion at T10-11, which could be degenerative in nature; Dr. Faris gave Plaintiff an injection of Depo Medrol and stated that "orthopedically there is nothing I would recommend or offer her" (id. at 338); (4) consultative examiner Dr. Samer Choksi, M.D. (id. at 339) examined Plaintiff on August 14, 2008, and found that despite her complaints of constant lumbar pain, Plaintiff had a normal gait, walked without assistance, was able to squat and heel-toe walk, had a normal Romberg, had only mild to moderate narrowing and spondylosis on x-rays of the lumbar spine, and had "an essentially normal examination". Dr. Choksi also noted that Plaintiff had received an epidural steroid injection that had helped decrease her pain, and he concluded that Plaintiff's "subjective complaints are not consistent with the objective medical findings" (id. at 339-42); (5) on October

13

15, 2008, treating osteopathic physician, Dr. Anuj Sharma, D.O., noted Plaintiff's diagnoses of lumbar and thoracic disc protrusions, degenerative disc disease of the cervical spine, and fibromyalgia but found that Plaintiff functioned independently and was advancing in her activities of daily living (id. at 362-63); (6) neurologist Dr. Edward Schnitzer, M.D. (who treated Plaintiff from August 2012 to November 2012, for neck and low back pain), noted upon examination that Plaintiff had a slowed gait with a cane, but normal sensory findings, normal posture, normal strength, normal reflexes, normal toe and heel walking, normal straight leg raise, and no acute distress, although some reduced range of motion.  Dr. Schnitzer recommended injections as needed, home exercise, treatment with heat and ice, and continuation of NSAIDS and steroids (id. at 456-61); (7) consultative orthopedic examiner William Crotwell, M.D. examined Plaintiff and completed a Physical Capacities Evaluation on September 20, 2012.  He opined that Plaintiff could sit/stand/walk for two hours at a time for eight hours a day, could lift twenty-five pounds continuously, could carry twenty pounds continuously, and could bend, squat, crawl, and climb frequently; Dr. Crotwell noted that Plaintiff had never had epidural blocks or surgery but had only been treated with medications, that although she rated her back pain, on the day of her examination, as "7/10", she could "get up" and

14

"move about" "without any difficulty at all," that her physical examination was essentially normal, that she was making a very poor attempt during the range of motion exam, and that all of her past MRI's were either normal or showed very minimal/mild changes; Dr. Crotwell noted activities of daily living including cooking, cleaning, unrestricted driving, and walking one to two blocks, although she reported ambulating with a cane sometimes; Dr. Crotwell concluded that there was "no objective evidence of any reason for [her] pain," that her pain was unsubstantiated by x-rays or tests, that she could definitely carry out light or sedentary work, that she could definitely work an eight-hour day without any major difficulty, and that she could probably do medium work; Dr. Crotwell concluded that he found "very little orthopedic problem with this patient" (id. at 434-37); and (8) medical expert/orthopedic specialist, Dr. Arthur Lorber, M.D., testified at the administrative hearing on March 13, 2013, that he had reviewed all of the medical evidence and that it was his opinion that Plaintiff could perform medium work and could stand/walk/sit for an hour at a time for a total of six hours each per day (stand/walk combined) (id. at 59, 66-67). Dr. Lorber noted that Plaintiff had been diagnosed with lumbar and thoracic disc protrusion, lumbar radiculopathy, cervical degenerative disc disease, and fibromyalgia, but indicated that verification of Plaintiff's alleged fibromyalgia would require

15

excluding other impairments (id. at 63, 66). Dr. Lorber also noted that Plaintiff's x-rays and MRI's showed only minimal changes and could not account for her complaints of pain (id. at 62) and that she was not a candidate for surgery. Additionally, Dr. Lorber discussed the findings of orthopedic surgeon, Dr. Clinton Howard, who examined Plaintiff on April 30, 2012, and recommended that Plaintiff do exercises at home, use anti-inflammatories, and return as needed, but Plaintiff never returned to him (id. at 64, 432). Dr. Lorber also discussed the findings of consultative orthopedist Dr. Crotwell that Plaintiff could perform medium to light work with unrestricted sitting, walking, and standing. (Id. at 61-66).

Based on the foregoing, the Court finds that the ALJ properly evaluated Ms. Hintz's opinion as an "other source" and properly assigned no weight to her opinion that Plaintiff is unable to work, given the inconsistency of the opinion with the substantial evidence in this case. See Coralic, 2014 U.S. Dist. LEXIS 159272 at *24, 2014 WL 6065757 at *9-10 (finding no error in ALJ's evaluation of nurse practitioner's opinion, together with the rest of the medical evidence, and assignment of little weight where the opinion was "not consistent with the medical evidence . . . or with Plaintiff's activities."). In addition, the Court finds that the substantial evidence supports the ALJ's determination that Plaintiff has the RFC for a range of light

work, with the stated restrictions.  Accordingly, Plaintiff's claim is without merit.

**V.**     **Conclusion**

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability and disability insurance benefits be **AFFIRMED**.

**DONE** this **25th** day of **March, 2016.**

/s/ SONJA F. BIVINS  
**UNITED STATES MAGISTRATE JUDGE**